UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
NISHAT CHUNIAN USA, INC.,

                Plaintiff,

  -against-

MY PILLOW, INC.,

                Defendant.
-------------------------------------------------------------- x

Civil Case No.

**COMPLAINT**

Plaintiff Nishat Chunian USA Inc. ("Plaintiff") by and through its undersigned attorneys, Herrick, Feinstein LLP, as and for its Complaint against Defendant My Pillow, Inc. ("Defendant") alleges as follows:

## NATURE OF THE ACTION

1. This is an action by Plaintiff for damages stemming from Defendant's breach of an Agreement concerning the sale of sheet sets and pillowcases, dated December 24, 2024 (the "Agreement"), entered into between Plaintiff and Defendant My Pillow, Inc. ("Defendant"), which is attached hereto as **Exhibit A** and incorporated herein by reference.

2. Although Plaintiff fulfilled its obligations under the Agreement, Defendant breached the Agreement by unreasonably refusing to pay Plaintiff the amounts owed thereunder—all while maintaining possession of the sheet sets and pillowcases contemplated therein.

3. Defendant has never disputed that it breached the Agreement, nor has it disputed the amount owed. In fact, Defendant has strung Plaintiff along for months with assurances that payment would be made, yet it has failed to pay the outstanding amount that is inarguably due. Plaintiff was therefore left with no choice but to file this action.

## THE PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Nishat Chunian USA Inc. is a New York corporation that is incorporated in New York County and regularly does business in New York (including at all times relevant to this action). Plaintiff's principal place of business is located in New York. At all times relevant to this action, Plaintiff had a physical presence in New York.

5. Defendant My Pillow, Inc. is a Minnesota corporation with its principal place of business in Minnesota. Defendant regularly does business in New York (including at all times relevant to this action), including conducting marketing, advertising, and sales in New York.

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. This Court has personal jurisdiction over the Defendant under New York's long-arm statute (CPLR 302(a)(1)), and/or pursuant to the terms of the Agreement.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), and/or pursuant to the terms of the Agreement.

## FACTS

**The Agreement**

9. Plaintiff Nishat Chunian USA Inc. is the U.S.-based subsidiary of Nishat Chunian Ltd. ("NCL").

10. NCL is a Pakistani textile manufacturing company.

11. Plaintiff supports and facilitates NCL's sales in the United States, particularly in cases where direct client engagement, marketing, or collection follow-up is required.

12. In or around 2022, Defendant expressed an interest in engaging the services of NCL and Plaintiff, and having NCL and Plaintiff manufacture goods for Defendant's benefit.

13. Subsequently, Plaintiff, NCL, and Defendant entered into a business relationship in which Plaintiff and NCL would manufacture and sell various goods to Defendant.

14. During the course of the business relationship between Plaintiff, NCL, and Defendant, Defendant regularly corresponded with representatives of Plaintiff and NCL who were in New York. Such correspondence took place over email, phone calls, video meetings, and other media.

15. During the course of the business relationship between Plaintiff, NCL, and Defendant, Defendant's representatives met with representatives of Plaintiff and NCL in person in New York at least once, including but not limited to a meeting in New York City in or around September 2022.

16. In or around 2023, Defendant sought to purchase goods from Plaintiff and NCL. Plaintiff, NCL, and Defendant agreed that Defendant would purchase sheet sets and pillowcases from Plaintiff and NCL, pursuant to purchase orders bearing numbers PO 9920 and PO 9996.

17. Plaintiff and NCL fulfilled their obligations by producing the sheet sets and pillowcases at Defendant's request and shipping two containers of goods to Defendant, with the expectation that Defendant would pay for the goods.

18. It eventually became clear that Defendant would be unable to fulfill its payment obligations for the goods identified in PO 9920 and PO 9996.

19. Accordingly, in or around December 2024, Plaintiff, NCL, and Defendant began contemplating a new contract between Plaintiff and Defendant whereby Defendant would pay for the goods identified in PO 9920 and PO 9996.

20. That contemplated contract was memorialized in the Agreement.

21. Plaintiff negotiated the Agreement in New York, and Defendant sent multiple emails to and joined calls with Plaintiff's representative while Plaintiff's representative was in New York.

22. The parties decided that the Agreement would be governed by New York law and any disputes arising thereunder would be brought exclusively in New York courts.

23. Specifically, Section 7 of the Agreement provides that: "This Agreement is governed by the laws of the State of New York" and "Any legal action shall be brought exclusively in New York courts."

24. The parties also decided that Defendant would be responsible for any legal costs incurred by Plaintiff if Defendant (defined in the Agreement as "MP") breached the Agreement.

25. Specifically, Section 6 of the Agreement provides that: "Any legal fees incurred by Nishat Chunian due directly to MP's failure to perform under this contract will be borne by MP."

26. Additionally, Section 7 of the Agreement provides that: "MP agrees to indemnify Nishat Chunian for any reasonable legal fees incurred due to a breach."

27. Plaintiff and Defendant ultimately entered into the Agreement on December 24, 2024. The Agreement was executed by Plaintiff's representative, who was and is based in New York.

28. The Agreement requires Defendant to (1) pay Plaintiff an initial payment of $25,000; (2) provide weekly statements of sales to Plaintiff and deposit funds from sales directly into Plaintiff's account; and (3) pay Plaintiff the full value of two containers of goods identified therein by February 28, 2025. *See* Sections 2 and 3.

**Defendant Breaches the Agreement and Admits its Breach**

29. Plaintiff performed its obligations under the Agreement.

30. Defendant accepted the goods and did not inform Plaintiff of any issues with the goods.

31. Defendant paid the initial $25,000 into Plaintiff's account at HAB Bank in New York City.

32. Defendant also made a payment to Plaintiff in the amount of $6,748.72 on or around January 31, 2025.

33. Defendant sent Plaintiff sales updates for a few weeks, but failed to send payments each week in accordance with the Agreement.

34. After Plaintiff sought payment for the sales reflected in the weekly updates, Defendant eventually stopped sending those sales updates altogether.

35. Defendant failed to make any further payments and failed to pay Plaintiff the full value of the goods by February 28, 2025.

36. Thus, Defendant breached the Agreement, and an outstanding balance of $507,337.70 is due and owing to Plaintiff.

37. Subsequent to Defendant's breach of the Agreement, the parties engaged in several verbal conversations about when and how Defendant could pay Plaintiff the outstanding balance of the Agreement.

38. During those conversations, Defendant never rejected or claimed there were any issues with the goods, never contested that it breached the Agreement, and never disputed the amount owed to Plaintiff under the Agreement. To the contrary, Defendant admitted it owes Plaintiff the full value of the goods minus the two payments mentioned above.

39. Defendant also suggested possible methods of repayment of the amount owed, including a potential payment from proceeds resulting from a sale of certain shares owned by its CEO. Defendant and its CEO even allowed Plaintiff to speak to Defendant's CEO's broker about the shares at issue and the potential proceeds from such a sale which would be used to satisfy Defendant's payment obligation under the Agreement.

40. However, to date, Defendant has failed to pay the outstanding amount that is undisputedly due.

41. Plaintiff, through its counsel, sent Defendant a notice of default letter on July 1, 2025 (the "Notice of Default").

42. The Notice of Default stated that $507,337.70 is due and owing to Plaintiff and demanded payment of the full amount due and owing no later than July 15, 2025. Plaintiff reserved all rights in the event Defendant failed to pay the amount due.

43. Defendant did not make payment in response to the Notice of Default.

44. Faced with no other alternative, Plaintiff now seeks relief from this Court.

## AS AND FOR A FIRST CAUSE OF ACTION:
### Breach of Contract

45. Plaintiff repeats and realleges the allegations set forth above as though fully set forth below.

46. The Agreement is a valid, binding, and enforceable contract between Plaintiff and Defendant.

47. Plaintiff acted in good faith and performed its duties and obligations under the Agreement.

48. Pursuant to Section 2 of the Agreement, Defendant was required to provide weekly statements of sales to Plaintiff and deposit funds from sales directly into Plaintiff's account.

49. Pursuant to Section 3 of the Agreement, Defendant was required to pay Plaintiff the full value of two containers of goods identified therein by February 28, 2025.

50. Defendant breached its duties and obligations under the Agreement and acted in bad faith by: (i) failing to make weekly payments in accordance with Section 2 of the Agreement; and (ii) failing to pay Plaintiff the full value of the goods by February 28, 2025, in accordance with Section 3 of the Agreement.

51. As a direct and proximate result of Defendant's breaches of the Agreement stated above, Defendant has caused Plaintiff direct damages in the amount of $507,337.70 in actual damages, as well as costs and attorneys' fees incurred in connection with this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nishat Chunian USA Inc. prays that the Court order the following relief in their favor and against Defendant as follows:

a) on its first cause of action, awarding Plaintiff damages in the amount of $507,337.70, plus interest, and costs and attorneys' fees incurred in connection with this action;

b) for such other and further relief as the Court may deem equitable, just and proper, including but not limited to, legal fees and costs.

Dated: New York, New York  
      August 15, 2025

HERRICK, FEINSTEIN LLP

By: */s/ Samuel J. Bazian*  
Samuel J. Bazian  
Joshua J. Schoch  
2 Park Avenue  
New York, New York 10016  
Telephone: (212) 592-1400  
Facsimile: (212) 592-1500  
*Attorneys for Plaintiff*